1   CENTER FOR DISABILITY ACCESS
    Ray Ballister, Jr., Esq., SBN 111282
2   Russell Handy, Esq., SBN 195058
    Phyl Grace, Esq., SBN 171771
3   Dennis Price, Esq., SBN 279082
    Mail: PO Box 262490
4   San Diego, CA 92196-2490
    Delivery: 9845 Erma Road, Suite 300
5   San Diego, CA 92131
    (858) 375-7385; (888) 422-5191 fax
6   phylg@potterhandy.com
7
    Attorneys for Plaintiffs
8

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| **Chris Langer**, | **Case No.** |
| Plaintiff, | **Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |
| v. | |
| **Harkham Family Enterprises, L.P.,** a California Limited Partnership; **Harkham Industries, Inc.,** a California Corporation; and Does 1-10, | |
| Defendants. | |

Plaintiff Chris Langer complains of Defendants Harkham Family Enterprises, L.P., a California Limited Partnership; Harkham Industries, Inc., a California Corporation; and Does 1-10 ("Defendants") and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility. He has a

---

1

Complaint

specially equipped van with a ramp that deploys out of the passenger side of his van and he has a Disabled Person Parking Placard issued to him by the State of California.

2.   Defendant Harkham Family Enterprises, L.P. owned the real property located at or about 1012 and 1032 S. Los Angeles St., Los Angeles, California, in March 2017.

3.   Defendant Harkham Family Enterprises, L.P. owns the real property located at or about 1012 and 1032 S. Los Angeles St., Los Angeles, currently.

4.   Defendant Harkham Industries, Inc. owned the real property located at or about 1012 and 1032 S. Los Angeles St., Los Angeles, California, in March 2017.

5.   Defendant Harkham Industries, Inc. owns the real property located at or about 1012 and 1032 S. Los Angeles St., Los Angeles, currently.

6.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

Complaint

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to the Grant Public Pay Parking and Public Pay Parking Lot in March 2017 to park and shop in the area.

11. The Grant Public Pay Parking and Public Pay Parking Lot are facilities open to the public, places of public accommodation, and business establishments.

12. Parking spaces are one of the facilities, privileges and advantages offered by Defendants to patrons of the Grant Public Pay Parking and Public Pay Parking Lot.

13. Unfortunately, although parking spaces were one of the facilities specifically reserved for patrons, there were no compliant van-accessible handicap parking spaces available for persons with disabilities that complied with the Americans with Disability Act Accessibility Guidelines (ADAAG) during plaintiff's visit.

14. There was one parking space marked as reserved for persons with disabilities at the Grant Public Pay Parking but it measured 96 inches in width while the access aisle measured just 60 inches in width. This is not van accessible.

15. There were two parking spaces marked and reserved for persons with disabilities at Public Pay Parking Lot but the parking spaces were all designed

Complaint

as standard parking spaces with none of them measuring 132 inches in width that are accompanied by a 60-inch width access aisle (a van-alternative design) or 96 inches in width by an access aisle of 96 inches in width (a traditional van-accessible space). Instead, all of them had access aisles that were 60 inches in width accompanied by parking spaces that were less than 132 inches in width. These are not van accessible.

16. Because there are 54 parking spaces in the parking lot serving the Grant Public Pay Parking, there should have been three compliant parking spaces for persons with disabilities. Unfortunately, there was only one accessible space.

17. Because there are 210 parking spaces in the parking lot serving the Public Pay Parking, there should have been seven compliant parking spaces for persons with disabilities. Unfortunately, there were only two accessible spaces.

18. Additionally, the standard disabled parking spaces at Grant Public Pay Parking and Public Pay Parking Lot did not have the required signage bearing the International Symbol of Accessibility (ISA) logo.

19. The standard handicap parking spaces at Grant Public Pay Parking and Public Pay Parking Lot did not have the required "Minimum Fine $250" signage.

20. The standard handicap parking spaces at Grant Public Pay Parking and Public Pay Parking Lot did not have the required tow-away signage.

21. The standard handicap parking spaces at Grant Public Pay Parking and Public Pay Parking Lot did not have the required "NO PARKING" lettering in the access aisle.

22. Additionally, there were just faded parking spaces that used to be reserved for persons with disabilities at Public Pay Parking Lot. The defendants do not maintain these parking spaces.

23. On information and belief, plaintiff alleges that there used to be compliant, maintained, accessible parking spaces in the parking lot prior to

Complaint

plaintiff's visit.

24. Plaintiff alleges, on information and belief, defendants allowed the parking spaces that were previously reserved for persons with disabilities to fade away into oblivion.

25. Currently, there are no compliant, accessible parking space designed and reserved for persons with disabilities in the parking lot serving the Grant Public Pay Parking and Public Pay Parking Lot.

26. Currently, the standard disabled parking spaces at Grant Public Pay Parking and Public Pay Parking Lot do not have the required signage bearing the International Symbol of Accessibility (ISA) logo.

27. Currently, the standard handicap parking spaces at Grant Public Pay Parking and Public Pay Parking Lot do not have the required "Minimum Fine $250" signage.

28. Currently, the standard handicap parking spaces at Grant Public Pay Parking and Public Pay Parking Lot do not have the required tow-away signage.

29. Currently, the standard handicap parking spaces at Grant Public Pay Parking and Public Pay Parking Lot do not have the required "NO PARKING" lettering in the access aisle.

30. The defendants had no policy or plan in place to make sure that the accessible parking spaces reserved for persons with disabilities remained useable prior to plaintiff's visit.

31. The defendants have no policy or plan in place to make sure that the accessible parking spaces reserved for persons with disabilities remain useable currently.

32. Plaintiff personally encountered these barriers.

33. This inaccessible parking lot denied the plaintiff full and equal access and caused him difficulty and frustration.

34. As a result of not being able to park at Grant Public Pay Parking Lot,

5

Complaint

plaintiff had to go to elsewhere. Plaintiff was able to successfully park nearby.

35. Plaintiff would like to return and patronize the Grant Public Pay Parking and Public Pay Parking Lot but will be deterred from visiting until the defendants cure the violations.

36. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

37. For example, there are numerous paint/stripe companies that will come and stripe a parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in fully compliance with federal and state access standards.

38. Plaintiff is and has been deterred from returning and patronizing the Grant Public Pay Parking and Public Pay Parking Lot because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize the Grant Public Pay Parking and Public Pay Parking Lot as a customer once the barriers are removed.

39. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless

Complaint

of whether he personally encountered them).

40. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of plaintiffs and against all defendants (42 U.S.C. section 12101, et seq.)

41. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

42. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are

Complaint

defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

c.  A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

43. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

44. Here, the lack of van accessible parking space at Grant Public Pay Parking and Public Pay Parking Lot is a violation of the law.

45. Any business that provides parking spaces must provide a sufficient number of handicap parking spaces. 1991 Standards § 4.1.2(5). 2010 Standards § 208. According to the 1991 Standards, if a parking lot has 107 spaces, it must have 5 accessible parking spaces. 1991 Standards § 4.1.2(5)(a). Under the 2010 Standards, a parking lot with 107 spaces must have 5 accessible spaces. 2010 Standards § 208.2 and 1 of them must be van accessible. *Id.* at 208.2.4.

46. Here, there was just one parking space marked as reserved for persons with disabilities at Grant Public Pay Parking Lot.

47. Here, there were just two parking spaces marked as reserved for persons

8

with disabilities at Public Pay Parking Lot.

48. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by state or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2. The access aisle must extend the full length of the parking spaces it serves. 2010 Standards § 502.3.2. Under the California Building Code, a sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. CBC § 1129B.4. The surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. *Id*.

49. Here, there was no pole or wall mounted signage with the wheelchair logo, in violation of the ADA.

50. Here, Defendants failed to post the required "Minimum Fine $250" signs, in violation of the ADA.

51. Here, Defendants failed to post the required tow-away signs, in violation of the ADA.

52. Here, there was no "NO PARKING" lettering in the access aisle, in violation of the ADA.

53. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily

9

Complaint

accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

54. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

55. Given its location and options, plaintiff will continue to desire to patronize the Grant Public Pay Parking and Public Pay Parking Lot but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of plaintiffs and against all defendants) (Cal Civ § 51-53)

56. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

57. Because the defendants violated the plaintiffs' rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Civ. Code § 51(f), 52(a).)

58. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiffs, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this court award damages and provide relief as follows:

1. For injunctive relief, compelling defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the

Complaint

Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act which damages provide for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; Cal. Civ. Code § 52.

Dated: June 26, 2017                CENTER FOR DISABILITY ACCESS

By: _____
Russell Handy, Esq.
Attorney for plaintiffs

11

Complaint